THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIMAR SHIPPING LIMITED,

Plaintiff,

v.

GLOBAL FISHING, INC., et al.,

Defendants.

CASE NO. C09-1825-JCC

ORDER

This matter comes before the Court on Defendant Marine Treasures, Inc.'s Motion for Summary Judgment. (Dkt. No. 185.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and denies the motion for the reasons explained herein.

I. **BACKGROUND**

The underlying dispute in this case relates to commercial fishing transaction. Plaintiff Simar Shipping alleges that it delivered approximately five hundred metric tons of crab to Defendant Global Fishing, Inc. at Pusan, South Korea, in September 2007. According to Simar's Amended Complaint, Global Fishing refused to pay for the crab and thereby breached a contract that the parties had negotiated for the delivery and sale of the crab. (Dkt. No. 24.) Simar filed a Second Amended Complaint in September 2011 with leave from this Court, joining Marine Treasures and Global Trading Resource Company as Defendants. (Dkt. No. 176.)

Simar's allegations against Marine Treasures and Global Trading arise out of money transfers to those entities from Global Fishing beginning in September 2007. Simar alleges that Global Fishing made the transfers, which totaled approximately $12 million, at a time when it was representing to Simar that it had insufficient funds to pay for the crab shipment. Global Fishing has since ceased operating. (Dkt. No. 200 at 2.) Simar claims that the transfers violated Washington's Uniform Fraudulent Transfer Act (UFTA), RCW 19.40.011 *et seq.*, in that they were intended to hinder or delay payment on Global Fishing's obligation to Simar. (*Id.*) Marine Treasures moves for summary judgment on Simar's fraudulent transfer claim.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The UFTA provides a cause of action for a creditor when a debtor fraudulently conveys assets to others, placing the assets out of reach of the creditor. A transfer is fraudulent if the debtor acted "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or transferred an asset "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." RCW 19.40.041(a). The UFTA includes a non-exclusive list of "badges of fraud" that may be considered in determining whether a debtor acted with "actual intent," including whether the transfer was to an insider, whether the transfer was of substantially all of the debtor's assets, whether the debtor was insolvent or became insolvent shortly after the transfer, and whether the transfer occurred shortly before or shortly after a substantial debt was

incurred. RCW 19.40.041(b). If fraudulent, a transfer may be voided "to the extent necessary to satisfy the creditor's claim." RCW 19.40.071(a)(1). The UFTA also allows for judgment to be entered against the first transferee of the asset or any subsequent transferee "other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee." RCW 19.40.081(b).

Marine Treasures argues that summary judgment is appropriate because it received the transfers in good faith and for reasonably equivalent value. It relies on a defense set forth in the UFTA, wherein "a transfer or obligation is not voidable under RCW 19.40.041(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." RCW 19.40.081(a). Alla Derevyanny, Marine Treasures' Vice President, states in a declaration that the money transfers from Global Fishing were for multiple purchases of crab product from Marine Treasures by Global Fishing. (Dkt. No. 187 at 2.) Ms. Derevyanny avers that Marine Treasures sold the crab product to Global Fishing at market prices, and she attaches to her declaration scores of invoices and shipping records memorializing the sales. (*Id.*) According to Marine Treasures, the crab deliveries account for the deposits that Plaintiff alleges were fraudulent. (Dkt. No. 185 at 3.) Marine Treasures also asserts that Simar has adduced no evidence that the transactions with Global Fishing were carried out in bad faith or with any knowledge of circumstances that would suggest fraud. (*Id.* at 8.)

Simar disputes Marine Treasures' reading of the UFTA and argues that Marine Treasures' intent regarding the transfers is immaterial. Rather, the relevant inquiry is whether Global Fishing acted with the requisite intent to elude its creditor in making the transfers. On this point, Simar cites various circumstances surrounding the establishment of Marine Treasures and its rapid rise to prominence that, according to Simar, suggest the transfers from Global Fishing were fraudulent. These include the fact that Marine Treasures was founded only weeks after the arrest in Russia of Global Fishing's president, Arkadi Gontmakher, in September 2007; that Marine Treasures' sole owner was and remains Roman Tkachenko—Mr. Gontmakher's nephew

and a long-term employee of Global Fishing—and that Marine Treasures' other employees, including Ms. Derevyanny, are former employees of Global Fishing. (Dkt. No. 199 at 2-3.) This close relationship between Global Fishing and Marine Treasures, according to Simar, raises a genuine issue of fact as to Global Fishing's intent in making the transfers. (*Id.* at 8.)

Simar is correct that Marine Treasures' intent in receiving the transfers is irrelevant to whether judgment may be entered against it under RCW 19.40.081(b)(1) if the transfers are found to be fraudulent. Marine Treasures argues that good faith constitutes an affirmative defense under RCW 19.40.081(a), but that argument ignores the central holding in *Thompson v. Hanson*, 168 Wash. 2d 738 (2010), in which the Washington Supreme Court resolved a split between Washington courts of appeal over this very issue. The court held unequivocally that "a plain reading of the remedial provision indicates that creditors may seek relief from first transferees without regard to the transferees' intent." 168 Wash. 2d at 749. Marine Treasures' argument regarding its own intent is therefore misplaced.

The relevant inquiry is whether Global Fishing, not Marine Treasures, acted "with actual intent to hinder, delay, or defraud" Simar in making the transfers to Marine Treasures. *See* RCW 19.40.041(a). On this issue, Simar has offered sufficient evidence to raise a genuine issue of fact. Indeed, viewing the evidence in the light most favorable to Simar suggests the existence of several of the "badges of fraud" set forth in the UFTA for evaluating intent. *See* RCW 19.40.041(b). First, the close relationship between Global Fishing and Marine Treasures is undeniable. Mr. Tkachenko, a Global Fishing employee, initiated Marine Treasures following the arrest of his uncle, the president of Global Fishing. Mr. Tkachenko is Marine Treasures' President, Secretary, Treasurer, and Chairman of the Board. (Dkt. No. 186 at 10.) He is also the corporation's only director, and he was its only employee until March 2009. (*Id.* at 2, 18.) It is difficult to escape the conclusion that transfers to Marine Treasures from Global Fishing were for the benefit of Mr. Tkachenko, a relative of an officer of Global Fishing and an insider under the UFTA. *See* RCW 19.40.011(7)(ii)(F). Marine Treasures argues that it cannot be an insider

because, as a corporation, it is not a relative of any officer of Global Fishing. But it would be odd if a transferee relative could avoid insider status merely by establishing a corporation of which the relative is the sole director and officer. Other courts have rejected such a formalistic interpretation of insider status in analogous circumstances. *See General Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1499 (11th Cir. 1997) (concluding "it is clear that in substance" a corporate transferee was an insider when the person who controlled the corporation was the son of the person in control of the transferor corporation). This Court similarly concludes that the close relationship between Global Fishing and Marine Treasures supports an inference that the transfers to Marine Treasures were fraudulent.

Second, the timing of Marine Treasures' incorporation and its rapid success are also consistent with Simar's allegation that the transfers were fraudulent. The parties do not dispute that Marine Treasures was established very shortly after Mr. Gontmakher's arrest, a period of turbulence and uncertainty for Global Fishing. Marine Treasures apparently rose from a one-man business operated out of Mr. Tkachenko's home to a major importer of crab, at the same time Global Fishing stopped importing crab and ceased doing business. (*See* Dkt. No. 186 at 2; Dkt. No. 200 at 2-3.) Ms. Derevyanny states that she moved from Global Fishing to Marine Treasures because Global Fishing could no longer keep her on payroll. (Dkt. No. 200 at 3.) Takako Yamamoto, Global Fishing's former logistics manager, also was hired at Marine Treasures because Global Fishing "had no business." (*Id.* at 7.) This evidence suggests that Global Fishing faced substantial financial strains or was already insolvent at the time the money transfers to Marine Treasures began—circumstances the UFTA identifies as indicative of fraudulent intent. *See* RCW 19.40.041(b).

Thus, a genuine issue of fact exists as to whether Global Fishing transferred money to Marine Treasures with actual intent to hinder payment on an obligation to Simar, and summary judgment on Simar's UFTA claim is inappropriate. If the transfers are ultimately found to be fraudulent at trial, Marine Treasures may nonetheless submit evidence that it provided value in

exchange for the transfers and that it is entitled to any remedy set forth in RCW 19.40.081(d).

**III.    CONCLUSION**

For the foregoing reasons, Defendant Marine Treasures' motion for summary judgment (Dkt. No. 185) is DENIED.

DATED this 10th day of January 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE